Wayne D. DERYCK, Plaintiff,

v.

**AKRON CITY SCHOOL DISTRICT, et al., Defendants.**

No. C85–2331A.

United States District Court, N.D. Ohio, E.D.

April 25, 1986.

---

James L. Martin, Kent, Ohio, for plaintiff.

Ray C. Sheppard, Akron, Ohio, for defendants.

## MEMORANDUM OPINION

DOWD, District Judge.

Before the Court is the motion of the defendants, the Akron City School District, Robert V. Bullis,[1] and Thomas L. Mitchell,[2] for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The plaintiff, Wayne D. Deryck, has responded to the motion. For the reasons that follow, the motion is granted.

The plaintiff alleges in his complaint that the defendants,

under the auspices of its Board of Education, have deprived Plaintiff continued employment without just cause, have unjustly discriminated against Plaintiff in the terms and conditions of his employment, have failed to afford him procedural due process, have denied him the potential of future employment available under Ohio statutes, all in violation of 42 USCS, § 1983 and § 1985.

Specifically, the plaintiff alleges that he possessed a property interest in continued employment arising out of his employment relationship with the Board. of Education, and his dismissal without a pretermination hearing violated his constitutional due process rights. The plaintiff requests compensatory damages of $3,900.00 in lost revenues for the year 1985, reinstatement, and compensation for insurance premiums paid on his vehicle in reliance on the contract. In the event he is not reinstated, the plaintiff requests compensation for lost revenues in the amount of $9,000.00 per year for 1986 and 1987.

The relevant facts are not in dispute. In February of 1984, Deryck accepted employment as a part-time flexible clerk for the United States Post Office. Deryck did not work a regular schedule. At times Deryck worked split shifts, from 4:30 a.m. until 8:00 or 8:30 a.m., and from 1:00 or 2:00 p.m. until 5:00 or 5:30 p.m. At other times Deryck worked a straight six hour day without a split. In August of 1984, Deryck signed a contract with the Akron City School District. The contract covered the 1984–1985 school year, and Deryck began working in September of 1984 as a contract van driver. Deryck's duties included transporting handicapped and retarded children to and from school twice a day, in the morning and in the afternoon. The contract provided that Deryck would receive $50.00 a day for his services.

In October of 1984, Deryck injured his shoulder while working at the post office. The injury prevented Deryck from performing his duties as a van driver, and Deryck arranged for a substitute driver to take his place. It appears that although Deryck was unable to drive the van, he accompanied the substitute driver on most of the days on which he did not drive. In December of 1984, it became apparent that Deryck's work schedule with the post office would at times prevent him from fulfilling his contractual duties as van driver. Deryck alerted his supervisor, defendant Mitchell, about this potential conflict. In a letter dated December 17, 1984, Mitchell wrote to Deryck about the potential post office conflict, and Deryck's indication that he might occasionally require the use of a substitute driver. The letter indicates that Mitchell requested Deryck to inform him of the circumstances and approximate number of times he would be unable to drive the van. The letter indicates that Deryck failed to provide Mitchell with the requested information.

Subsequently, in January of 1985, the plaintiff met with defendant Bullis. At the

---

**1.** Bullis is the Assistant to the Superintendent for Business and Finance of the Akron Public Schools. Bullis signed the service contract hiring Deryck on behalf of the Akron Public Schools.

**2.** Mitchell is the Coordinator of Transportation Services for the Akron Public Schools. Mitchell was Deryck's direct supervisor during the course of his employment.

meeting, Deryck requested Bullis to modify his contract to allow a substitute driver to drive the van during the times when Deryck's post office schedule prevented him from driving the van. In a letter dated January 30, 1985, Bullis informed Deryck that he would have to meet the full conditions of his contract, including the provision authorizing substitute drivers only during periods of illness and emergencies. The letter further provided that should Deryck fail to fulfill those contractual obligations he would be terminated on February 15, 1985. Deryck neither contacted Bullis, nor otherwise indicated his willingness to comply with the contractual terms, after receiving the letter. On February 15, 1985 Deryck's employment was terminated.

A court may grant summary judgment only if there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court must view "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] ... in the light most favorable to the party opposing the motion." *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). The defendant contends that the plaintiff was an independent contractor of the Board of Education, and that he therefore was not a classified public employee. In support of this position, the defendant notes that the Board paid Deryck on a monthly basis, the Board deducted no withholding or social security taxes from Deryck's paychecks, and that Deryck paid estimated income taxes on a quarterly basis. The plaintiff responds that disputed facts exist over whether the plaintiff is an independent contractor. Viewing the facts in a light most favorable to Deryck, and assuming that he is not an independent contractor, the Court finds that the defendant is entitled to judgment as a matter of law.

■ The gravamen of the plaintiff's argument is that he possessed a protected property interest in continued employment arising out of his employment as a contract van driver with the Akron City School District. It is clear that any protected property interest in continued employment possessed by Deryck arises out of state law. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Thus, whether Deryck possessed a due process right to a pretermination hearing depends on the nature of the property interest as defined by state law.

The plaintiff first contends that § 124.34 of the Ohio Revised Code provides him with a protected property interest. Section 124.-34 provides that public employees in the classified service may not be removed except for cause. Ohio Rev.Code Ann. § 124.34 (1984). The United States Supreme Court, interpreting § 124.34, has held that the Ohio statute creates a property right in continued employment, and that a person may not be deprived of this right without a pretermination hearing. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, ——– ——–, 105 S.Ct. 1487, 1491–92, 84 L.Ed.2d 494 (1985). An individual who is in the unclassified civil service, however, does not possess a property interest in continued employment. *Vodila v. Clelland*, 613 F.Supp. 69, 71 (N.D.Ohio 1985). Deryck's entitlement to a hearing depends on whether he was a classified public employee in possession of protected property right by virtue of § 124.34.

■ The Court believes that the proper focus for determining whether Deryck was a classified public employee requires analysis of Deryck's position as it fits into the statutory scheme, and not of his status as an independent contractor. The distinguishing feature of the classified civil service is that applicants for skilled civil service jobs have their "merit and fitness" determined by competitive examination, and are appointed or employed from eligibility lists. Ohio Rev.Code Ann. § 124.-11(B)(1) (Supp.1985). Unskilled classified civil service applicant positions are also filled from applicant lists, and unskilled applicants may be required to produce evidence, or take tests, to qualify for designation on the list. *Id.* § 124.11(B)(2). Per-

sons "not properly tested and appointed from a civil service list ... [are] not entitled to the protections of civil service...." *State ex rel. Stough v. Board of Education,* 50 Ohio St.2d 47, 49, 362 N.E.2d 266 (1977). The defendant has presented the Court with evidence that Deryck was an independent contractor, and thus not employed pursuant to Chapter 124. The plaintiff has failed to produce any evidence that Deryck sat for a civil service examination or was selected as a contract van driver from a competitive class of potential employees. As a result, the Court finds that the position held by Deryck was not one within the classified service and that he was not subject to the protections provided in § 124.34. Accordingly, the plaintiff has no property interest pursuant to § 124.34 of the Ohio Revised Code.

█ The plaintiff argues in the alternative that he possesses a property interest in continued employment by virtue of § 3319.-081, which applies to nonteaching employees "whose contracts of employment are not otherwise provided by law." Ohio Rev. Code Ann. § 3319.081 (1985). The plaintiff's argument fails, however, because any property rights in continued employment exist by virtue of § 124.34. The Ohio Supreme Court has held that "[b]y its specific terms, R.C. 3319.081 can have no application to city school districts, which are governed by R.C. 124.01 *et seq.*" *State ex rel. Stough v. Board of Education,* 50 Ohio St.2d 47, 48, 362 N.E.2d 266 (1977). Defendant Akron City School District is a city school district, and for that reason, Deryck's rights are controlled by § 124.34. The Court has already found that § 124.34 does not provide Deryck a protected property interest in continued employment. Section 3319.081 does not create a protected property right for Deryck.

█ Even assuming that Deryck did possess a right in continued employment as a contract van driver, the Court concludes that Deryck received the due process equivalent of a pretermination hearing. The rationale behind *Loudermill*'s requirement of a pretermination hearing is to allow for "some opportunity for the employee to present his side of the case," and a "meaningful opportunity to invoke the discretion of the decisionmaker ... before the termination takes effect." *Loudermill,* 105 S.Ct. at 1494. In this case, the meeting between Deryck and Bullis fulfilled the purposes behind the requirement of conducting a pretermination hearing. Deryck was able to request a modification to his contract, and explain in person the reasons for the request. Bullis was able to hear Deryck's side of the issue, and to consider the merits of the request; indeed, in the termination letter, Bullis indicated that only "[a]fter considerable discussion and examination" was Deryck's request for contract modification denied. The Supreme Court has stated that the "pretermination 'hearing,' though necessary, need not be elaborate," and " 'something less' than a full evidentiary hearing is sufficient." *Id.* at 1495. The Court concludes that Deryck had an opportunity to present his request for contract modification to the Board through Bullis, and that Bullis fully considered Deryck's request prior to Deryck's termination; this process adequately substituted for a formal hearing, and complied with the requirements of due process under these circumstances. For the foregoing reasons, the Court grants the defendants' motion for summary judgment.

IT IS SO ORDERED.